**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

NATHAN BURGESS, JR.,                   :

      Plaintiff,                              :

vs.                                     :          CA 13-0426-C

CAROLYN W. COLVIN,                      :
Acting Commissioner of Social Security,
                              :

      Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 14 & 15 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of plaintiff's counsel at the April 30, 2014 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1]      Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 14 & 15 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of
(Continued)

Plaintiff alleges disability due to posttraumatic stress disorder and diabetes mellitus. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1.     The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.**
>
> **2.     The claimant has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**
>
> The claimant worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity. The claimant testified that he worked approximately 15 hours per week as a security guard until June 2011. Although the claimant's work activity after the alleged disability onset date was not substantial gainful activity, the undersigned has considered the significant nature of the claimant's work activity in evaluating the credibility of the claimant's allegations regarding his functional limitations.
>
> **3.     The claimant has the following severe impairments: posttraumatic stress disorder and diabetes mellitus (20 CFR 404.1520(c) and 416.920(c)).**
>
> .     .     .
>
> **4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> .     .     .
>
> In activities of daily living, the claimant has mild restriction. The claimant reported no problems taking care of his personal needs. The claimant also reported that he can prepare meals, do yard work, and that he goes for daily walks but that he does not drive because of medication side effects and his daughter shops for him.
>
> In social functioning, the claimant has moderate difficulties. The claimant testified that he quit his job in June 2011 because of problems with his coworkers, that he does not like to be around people and he generally

---

appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

stays to himself, and that he lives with his daughter and grandchild. The claimant reported that he goes to church regularly.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant testified that his PTSD affects his train of thought but that he is able to watch movies and follow the plot. The claimant reported that he can pay bills and count money but that he has difficulties remembering and paying attention, and that he does not handle stress or changes in routine very well.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation[] which have been of extended duration.

Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

.     .     .

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments. Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant can occasionally perform fine detailed work with the left hand and can repetitively perform fine detailed work with the right hand. The claimant can frequently stoop, kneel, crouch, crawl, climb ramps and stairs, and balance. The claimant can occasionally climb ladders, ropes, and scaffolds. The claimant can frequently lift and carry up to 25 pounds and can occasionally lift up to 50 pounds. The claimant can push and pull arm and leg controls without limitation. The claimant cannot tolerate concentrated exposure of five minutes or more to temperature extremes, i.e., temperatures below 32 degrees or above 100 degrees. The claimant can perform simple, routine, repetitive tasks. The claimant can maintain concentration and attention for up to two hours secondary to a moderate limitation in concentration, persistence, and pace. Based on a moderate limitation in interacting and social functioning, the claimant can tolerate brief superficial contact with the public, can work in close proximity to others but needs to work**

**independently, and can tolerate nonthreatening supervision. The claimant can adapt to minimal changes in the work setting. The claimant requires assistance in setting work goals.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)— i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant alleges that he is disabled and thus unable to work due to arthritis in his left forearm and hands, high blood pressure, diabetes, back and knee problems, and PTSD. The claimant testified that he wears special shoes and socks for his diabetes, that he is tired and has less energy because of his diabetes, and that he cannot use his left hand very much because of a deformity on his finger. The claimant testified that his medication makes him dizzy, sleepy, and tired and that he does not drive anymore due to these side effects. The claimant testified that he can sit for approximately 30 minutes, and that he can pick up approximately 20 to 25 pounds. The claimant testified that his PTSD makes him irritable, that he goes to the VA every week for group counseling, and that his PTSD affects his train of thought.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of the claimant's alleged diabetes, VA treatment notes show a history of diabetes with no significant complications. Eye examinations show no diabetic retinopathy. There is no evidence in the record of any hospitalizations related to the claimant's diabetes or any end organ damage. Although the claimant has complained of pain, numbness, and tingling in his feet, the claimant was recently fitted with diabetic shoes and socks. Treatment notes show that this "conservative approach is the care choice for treatment" and it "should work quite well" for the claimant. The claimant testified that his diabetic shoes and socks work well and he does not retain as much fluid. Treatment notes also show, however, that the claimant is required to check his blood sugar daily, take insulin, and monitor his diet. Consequently, the undersigned finds no evidence of functional limitations related to the claimant's diabetes beyond those inherent in the medium level of exertion, except that the claimant can only occasionally climb ladders, ropes, and scaffolds, occasionally lift up to 50 pounds, and is limited to no more than frequently stooping, kneeling, crouching, crawling, climbing ramps and stairs, and balancing and no concentrated exposure to temperature extremes. These limitations would also accommodate the claimant's hypertension and hyperlipidemia. There is no evidence in the record of any significant complications secondary to the claimant's hypertension or hyperlipidemia that would support greater limitations.

.     .     .

In terms of the claimant's [] PTSD, the claimant was diagnosed with PTSD in approximately November 2007. The claimant was prescribed various psychotropic medications. In December 2010, the claimant was evaluated for a service connected PTSD at the VA. The claimant reported that he does not like to be around a lot of people, he does not get along with people, he experiences nightmares, he is depressed and he stays to himself a lot. Upon examination, the claimant's mood was mildly to moderately irritable with a somewhat restricted affect. The claimant denied suicidal or homicidal ideation, hallucinations, and delusions. The claimant's attention, memory, and judgment were within normal limits. The claimant was diagnosed with PTSD. The examiner noted that there was not a total occupational or social impairment due to the claimant's PTSD. The examiner also noted that the claimant was competent to manage his own finances. The examiner found that the claimant's PTSD was at least as likely as not caused by or a result of an in-service event. In March 2011, the VA issued a Rating Decision finding a 50% service connected disability based on the claimant's PTSD. The VA determined that the claimant's PTSD was not severe enough to warrant a 70% disability and that the evaluation was not considered permanent because there was a likelihood of improvement in the claimant's condition.

David Formwalt, Psy.D., a clinical  psychologist, evaluated the claimant on a consultative basis in July 2007. Upon examination, the claimant's affect appeared tense and irritable and his mood appeared angry. The

claimant made bizarre comments at times and appeared to present as extremely confused. The claimant's speech was tangential at times and he appeared to respond to internal stimuli, although Dr. Formwalt noted that this appeared intentional. Dr. Formwalt's impression [was] malingering, possibly due to secondary gain factors. Dr. Formwalt noted that the claimant was not motivated to do his best during the evaluation and his statements appeared unreliable.

As for the claimant's subjective complaints related to PTSD, including irritability, difficulties getting along with others, and difficulties concentrating, the claimant's allegations are only partially credible. While the claimant has a documented history of PTSD, the evidence does not support a complete restriction in his ability to work. Mental health treatment notes show essentially normal mental status exams. Group therapy counseling notes show that the claimant participated fully in the sessions and acted appropriately. The VA does not consider the claimant's PTSD permanent and expects an improvement in the claimant's condition. The claimant reported that his medication helps him relax, makes him less anxious and irritable, helps him sleep, and reduces the frequency of his nightmares. Although the claimant testified that his medication makes him dizzy, sleepy, and tired, he did not report any medication side effects on any Disability Report. VA records show only minimal, infrequent complaints of side effects. The claimant reported as recently as November 2011 that his medication does not cause any side effects. The undersigned nonetheless acknowledges that the claimant's PTSD can reasonably be expected to cause some limitations and[,] accordingly, limit[s] the claimant to simple[,] routine, repetitive task[s] with minimal changes in the work setting and assistance in helping set work goals. With respect to the claimant's alleged difficulties focusing and concentrating, VA records show normal attention and memory. The claimant testified that he can watch and follow along with a movie. The undersigned therefore finds that the claimant can maintain concentration and attention for two hours at a time. With respect to the claimant's alleged difficulties getting along with others, the undersigned has fully accommodated the claimant's allegations by limiting the claimant to brief, superficial contact with the public, allowing the claimant to work in close proximity to others but independently, and receiving nonthreatening supervision. Although the claimant testified that he quit working in June 2011 because of problems with his coworkers, the residual functional capacity allows for this difficulty by limiting the claimant's contact with the public, coworkers, and supervisors.

As for the opinion evidence, the undersigned gives great weight to the opinion of Dr. Hinton, as his opinion is generally consistent with the record as a whole. The undersigned gives less weight to the GAF scores assigned to the claimant by his counselor and psychiatrist. Although VA records show GAF scores of 41-50, which are indicative of serious symptoms or a serious impairment in social or occupational functioning, these scores are inconsistent with the record, which shows some

difficulties and limitations, but nothing disabling. In any event, the Commissioner has declined to endorse the GAF scale for use in Social Security and SSI disability programs and has indicated that GAF scores have no direct correlation to the severity requirements of the mental disorder listings.

The undersigned has considered the opinion of Dr. McBane, who evaluated the claimant in 2007, but gives it little weight due [to] the remoteness of the exam. Similarly, the undersigned gives less weight to the opinion of Dr. Formwalt, who evaluated the claimant in 2007, based on the remoteness of the exam.

In sum, the above residual functional capacity assessment is supported by a preponderance of the most credible evidence of record, including VA treatment records and the opinion of Dr. Hinton.

**6.     The claimant is capable of performing past relevant work as a cleaner/housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).**

The vocational expert testified that the claimant's past work as a cleaner/housekeeper, DOT Code 323.687-014, is light unskilled work with a specific vocational profile of 2.

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed. The vocational expert testified that an individual with the same age, education, work experience, and residual functional capacity as the claimant could continue to work as a cleaner/housekeeper. The testimony of the vocational expert is accepted in accordance with Social Security Ruling 00-4P.

**7.     The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).**

(Tr. 23, 24, 25, 25-27 & 28-30 (some internal citations and all internal quotation marks omitted; emphasis in original).)  The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

<u>**DISCUSSION**</u>

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. An ALJ, in turn,

> uses a five-step sequential evaluation to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Soc. Sec.*, 457 Fed. App'x 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted).

If a plaintiff proves that he cannot do his past relevant work, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Id.*; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, but importantly, although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform his past relevant work as a cleaner/housekeeper, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Burgess asserts two reasons why the Commissioner's decision to deny him benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ erred as a matter of law by not according great weight to the March 18, 2011 Disability Rating Decision of the Department of Veterans Affairs; and (2) the ALJ's

---

[3]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

mental and physical residual functional capacity determination is not supported by substantial evidence. The Court will address each issue in turn.

A. **March 18, 2011 Disability Rating Decision of the Department of Veterans Affairs.** Burgess initially contends that the ALJ erred as a matter of law in failing to accord great weight to the March 18, 2011 Disability Rating Decision of the Department of Veterans Affairs. (*See* Doc. 13, at 2-5.) There can be no question but that on March 18, 2011, the Department of Veterans Affairs notified Burgess of its favorable decision regarding his June 8, 2010 claim for service-connected compensation. (T. 174-182.) More specifically, Burgess received a 50% service-connected disability rating by the Veterans Administration based on PTSD, with major depressive disorder. (*Id*. at 175 & 180-181.)

> We have granted service connection posttraumatic stress disorder, PTSD, as directly related to military service. Service connection may be granted for a disability which began in military service or was caused by some event or experience in service. Records show you reported while serving in the Navy, you witnessed a plane crash and later saw the bodie[s] recover[ed] from the crash. Your service treatment records are negative of complaint, treatment, or diagnosis for PTSD. Current treatment records from VA Medical Center, Pensacola show complaint[] and treatment for PTSD.
>
> At your VA Examination dated December 23, 2010, you reported social isolation, depression, and nightmares. Current treatment include[s] Celexa, Minipress, and Trazadone. Results from you[r] mental exam showed you were fully oriented, well groomed, and cooperative. Your mood was noted [as] irritable, and [you were noted to have] restricted affect. You denied suicidal intent[] or planning, homicidal ideation, hallucinations, and delusions. Your attention, memory, and judgment appeared to [be] within normal levels. The examiner also noted you are capable of managing your financial affairs. There was no evidence of occupational or social impairment due to PTSD symptoms. Deficiencies in areas include family relations, work, mood, and judgment. Your Global Assessment of Functioning was 45, which shows serious symptoms.
>
> The physician stated your PTSD is [at] least as likely as not caused by a result of the fear of hostile military[] or terrorist activity. He also noted your stressors are linked and adequate to support your diagnosed condition of PTSD[] and symptoms. Based on evidence showing

depression, and social isolation, an evaluation of 50 percent is assigned from June 8, 2010, the day we received your claim. An evaluation of 50 percent is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocatory (sic), or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. A higher evaluation of 70 percent is not warranted unless there are deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work[-]like setting); inability to establish and maintain effective relationships.

Since there is a likelihood of improvement, the assigned evaluation is not considered permanent and is subject to a future review examination.

(Tr. 180-181.)

The Eleventh Circuit has recognized that although a disability rating decision by the Veterans Administration is not "binding" on the ALJ, such a rating is entitled to "'great weight[.]'" *Pearson v. Astrue,* 271 Fed.Appx. 979, 981 (11th Cir. Apr. 1, 2008), citing *Brady v. Heckler,* 724 F.2d 914, 921 (11th Cir. 1984); *see Rodems ex rel. Rodems v. Colvin,* 2014 WL 795966, *4 (N.D. Ala. Feb. 27, 2014) ("An ALJ is obligated to consider a disability rating assigned by another agency, not just the medical records behind the rating, but there is no obligation to agree with the rating."). "The assignment of great weight may be implicit in the ALJ's decision." *Anderson v. Astrue,* 2011 WL 4449422, *3 (M.D. Ga. Aug. 24, 2011) (citing *Kemp v. Astrue,* 308 Fed.Appx. 423, 426 (11th Cir. 2009)), *report and recommendation adopted by* 2011 WL 4461522 (M.D. Ga. Sept. 26, 2011). Indeed, the Eleventh Circuit noted in *Kemp* the following: "The ALJ relied on the VA records

and referenced the disability ratings, in addition to [the] rest of the relevant evidence, throughout his decision. As a result, he implicitly found that the VA disability ratings were entitled to great weight." 308 Fed.Appx. at 426.

This Court can read the ALJ's decision in this case in no other manner than to find that she implicitly found that the March 18, 2011 disability rating of the Department of Veterans Affairs was entitled to great weight. The ALJ not only referenced the disability rating but also noted the evidence in the VA records underlying that rating. (Tr. 28 ("In December 2010, the claimant was evaluated for a service connected PTSD at the VA. The claimant reported that he does not like to be around a lot of people, he does not get along with people, he experiences nightmares, he is depressed and he stays to himself a lot. Upon examination, the claimant's mood was mildly to moderately irritable with a somewhat restricted affect. The claimant denied suicidal or homicidal ideation, hallucinations, and delusions. The claimant's attention, memory, and judgment are within normal limits. The claimant was diagnosed with PTSD. The examiner noted that there was not a total occupational or social impairment due to the claimant's PTSD. The examiner also noted that the claimant was competent to manage his own finances. The examiner found that the claimant's PTSD was at least as likely as not caused by or a result of an in-service event. In March 2011, the VA issued a Rating Decision finding a 50% service connected disability based on the claimant's PTSD. The VA determined that the claimant's PTSD was not severe enough to warrant a 70% disability and that the evaluation was not considered permanent because there was a likelihood of improvement in the claimant's condition. ").) Even more importantly, the ALJ took the VA examination findings underlying the disability rating (and the claimant's allegations) into account in formulating her assessment of Burgess's mental RFC. (Tr. 29 ("The undersigned nonetheless acknowledges that the

claimant's PTSD can reasonably be expected to cause some limitations and[,] accordingly, limit[s] the claimant to simple[,] routine, repetitive task[s]  with minimal changes in the work setting and assistance in helping set work goals. With respect to the claimant's alleged difficulties focusing and concentrating, VA records show normal attention and memory. The claimant testified that he can watch and follow along with a movie. The undersigned therefore finds that the claimant can maintain concentration and attention for two hours at a time. With respect to the claimant's alleged difficulties getting along with others, the undersigned has fully accommodated the claimant's allegations by limiting the claimant to brief, superficial contact with the public, allowing the claimant to work in close proximity to others but independently, and receiving nonthreatening supervision. Although the claimant testified that he quit working in June 2011 because of problems with his coworkers, the residual functional capacity allows for this difficulty by limiting the claimant's contact with the public, coworkers, and supervisors.").) Because it is clear to the undersigned that the ALJ implicitly found that  the March 18, 2011 disability rating of the Department of Veterans Affairs was entitled to great weight, the ALJ committed no error of law.[4]

---

[4]        To the extent Burgess also contends that the ALJ erred in affording "less weight" to the GAF scores noted by his VA counselor and psychiatrist (*see* Tr. 29), the undersigned finds no error in this regard. Initially, the undersigned notes that GAF scores of 41 to 50, which appear with regularity in the VA records in this case (*see, e.g.,* Tr. 240 (list of GAF scores)), indicate "[s]erious symptoms OR any serious impairment in social, occupational, or school functioning."   http://depts.washington.edu/washinst/Resources/CGAS/GAF   (last  visited May 15, 2014); *accord Davis v. Astrue,* 287 Fed.Appx. 748, 758 (11th Cir. Jul. 9, 2008)("[A] GAF of 50 indicates either serious symptoms or serious impairments in social, occupational, or school functioning."). However, not only has "the Commissioner [] declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and [] indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings[,]'" *Wind v. Barnhart,* 133 Fed.Appx. 684, 692 n.5 (11th Cir. 2005) (citation omitted), "the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders does not utilize the GAF score scale, noting that it was recommended 'the GAF be dropped . . . for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" *Cranford v. Commissioner of Social Security,* 2014 WL 1017972, *7 n.7 (M.D. Fla. Mar. 17, 2014), (Continued)

**B.**    **The ALJ's Mental and Physical RFC Determination is not Supported by**

**Substantial Evidence**. In his brief, plaintiff argued in a broad and general manner that

the ALJ's mental **and** physical RFC determination is not supported by substantial

evidence (Doc. 13, at 5); however, the remainder of plaintiff's brief focuses solely upon

the ALJ's mental RFC determination (*see id*. at 5-8). In addition, counsel for Burgess

admitted during oral argument that the physical limitations found by the ALJ  were

correct and supported by substantial evidence. Thus, "any potential arguments

regarding the ALJ's assessment of his physical limitations are waived and abandoned."

*Land v. Commissioner of Social Security*, 494 Fed.Appx. 47, 49 n.1 (11th Cir. Oct. 26, 2012),

citing *Sepulveda v. United States Attorney General*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

Moreover, because this Court finds that the physical limitations noted by the ALJ are

supported by substantial evidence in the record (*compare* Tr. 26 (noting Burgess is

capable of performing medium work as defined in the regulations, except that he can

only occasionally perform fine detailed work with the left hand but repetitively with the

---

quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013). In addition, in numerous unpublished opinions, various courts of appeals have determined that "a GAF score of 50 or below is not in and of itself determinative of disability." *Taylor v. Astrue*, 2012 WL 2047723, *5 n.2 (N.D. Ala. Jun. 5, 2012) (citing a collection of decisions by courts of appeal).

        In light of the foregoing, and because the ALJ correctly determined that the noted GAF scores were inconsistent with the record (*compare* Tr. 29 *with* Tr. 244-249, 255-260, 264-265, 317, 347-352, 369, 375-384 & 388-390 (counselor's consistent notation that Burgess attended each group PTSD therapy session on time and fully participated in all activities, with behavior appropriate for the setting and with an affect and demeanor "congruent with behavior and diagnosis[]") *and* Tr. 251-252, 262-263, 290, 372, 386 & 393 (although plaintiff often reported his mood as irritable, and at times the psychiatrist or psychologist noted an irritable affect, all other objective findings—e.g., speech,  thoughts, attention, memory, and judgment—were found to be normal or within normal limits, with no evidence of thought disorder or delusion, suicidal or homicidal ideation, or auditory or visual hallucinations), this Court finds that the ALJ did not err in according "less weight to the GAF scores assigned to the claimant by his counselor and psychiatrist." (Tr. 29.)

right hand, can frequently stoop, kneel, crouch, crawl, climb ramps and stairs, and balance, occasionally climb ladders, ropes, and scaffolds, etc.) *with* Tr. 40 & 48 (plaintiff's hearing testimony that he worked as a security guard for 15 hours per week from 2007 through June of 2011 and that he could pick up 20 to 25 pounds) *and* Tr. 241-242, 277, 280, 282, 294, 298, 306-307, 354, 364-366 & 373-374 (medical evidence which supports the ALJ's physical limitations)), the sole focus of this portion of the Court's decision will be upon determining whether the ALJ's mental RFC determination is supported by substantial evidence.

Initially, the Court notes that the responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. §§ 404.1546(c) & 416.946(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins, supra,* 457 Fed. Appx. at 870 n.5 (citing 20

C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)).  Here, the ALJ determined Burgess's mental RFC as follows: "**After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c)[.] . . . The claimant can perform simple, routine, repetitive tasks. The claimant can maintain concentration and attention for up to two hours secondary to a moderate limitation in concentration, persistence, and pace. Based on a moderate limitation in interacting and social functioning, the claimant can tolerate brief superficial contact with the public, can work in close proximity to others but needs to work independently, and can tolerate nonthreatening supervision. The plaintiff can adapt to minimal changes in the work setting. The claimant requires assistance in setting goals.**" (Tr. 26 (emphasis in original).)

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D.Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd*, 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013)[5]; *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ

---

[5]     In affirming the ALJ, the Eleventh Circuit rejected Packer's substantial evidence argument, noting, she "failed to establish that her RFC assessment was not supported by substantial evidence[]" in light of the ALJ's consideration of her credibility and the medical evidence.  *Id.* at 892.

must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[6]

In order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue,* 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—

---

[6]    It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue,* 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna,* 395 Fed. App'x at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ **could have** relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen,* 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart*, 264 F.Supp.2d 1007 (S.D. Ala. 2003). In this case, of course, there is no mental RFC assessment of record from a treating or examining physician; however, the record does contain a mental RFC assessment completed by a non-examining, reviewing psychologist, Dr. Donald Hinton (Tr. 313-315). The ALJ did accord great weight to Dr. Hinton's opinion (Tr. 29), a determination consistent with substantial evidence in the record, as explained more fully below.

Importantly, in establishing Burgess's RFC, which means determining Burgess's "remaining ability to do work despite [his] impairments[,]" *Packer*, 542 Fed.Appx. at 891—keeping a focus on the extent of those impairments as documented by the credible record evidence—the ALJ walked through the VA disability rating decision and VA records underlying that decision or otherwise in the record, along with the claimant's testimony (*see* Tr. 28-29), to ultimately conclude that her RFC assessment was "supported by a preponderance of the most credible evidence of record, including VA treatment records and the opinion of Dr. Hinton." (Tr. 29.) Indeed, after setting out the important PTSD evidence of record and plaintiff's testimony, the ALJ then stated the following: "The undersigned [] acknowledges that the claimant's PTSD can reasonably be expected to cause some limitations and[,] accordingly, limit[s] the claimant to simple[,] routine, repetitive task[s] with minimal changes in the work setting and assistance in helping set work goals. With respect to the claimant's alleged difficulties focusing and concentrating, VA records show normal attention and memory. The claimant testified that he can watch and follow along with a movie. The undersigned therefore finds that the claimant can maintain concentration and attention for two hours at a time. With respect to the claimant's alleged difficulties getting along with others, the undersigned has fully accommodated the claimant's allegations by limiting the

claimant to brief, superficial contact with the public, allowing the claimant to work in close proximity to others but independently, and receiving nonthreatening supervision. Although the claimant testified that he quit working in June 2011 because of problems with his coworkers, the residual functional capacity allows for this difficulty by limiting the claimant's contact with the public, coworkers, and supervisors." (Tr. 29.) This analysis shows to this Court that the ALJ considered Burgess's mental condition as a whole in determining his mental RFC. Accordingly, the ALJ's mental RFC determination provides an articulated linkage to the medical evidence of record. The linkage requirement is simply another way to say that, in order for this Court to find that an RFC determination is supported by substantial evidence, ALJs must "show their work" or, said somewhat differently, show *how* they applied and analyzed the evidence to determine a plaintiff's RFC. *See, e.g., Hanna*, 395 Fed. Appx. at 636 (an ALJ's "decision [must] provide a meaningful basis upon which we can review [a plaintiff's] case"); *Ricks*, 2012 WL 1020428, at *9 (an ALJ must "explain the basis for his decision"); *Packer*, 542 Fed.Appx. at 891-892 (an ALJ must "provide *enough reasoning* for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole[]" (emphasis added)). Thus, by "showing her work" (*see* Tr. 28-29), the ALJ has provided the required "linkage" between the record evidence and her RFC determination necessary to facilitate this Court's meaningful review of her decision.[7]

---

[7] The undersigned reiterates that the ALJ implicitly gave great weight to the March 18, 2011 disability rating decision by the Department of Veterans Affairs and correctly afforded "less weight" to the GAF scores noted by Burgess's VA counselor and psychiatrists/psychologists. In addition, this Court emphasizes that the ALJ's mental RFC assessment is not simply supported by the mental RFC assessment completed by Dr. Hinton (Tr. 313-315) but, as well, is supported by the relatively benign objective (and other) findings by various VA psychiatrists/psychologists (Tr. 251-252 ("Mood was reported as 'PRETTY IRRITABLE' and affect was ENGAGING-IRRITABLE AT TIMES, appropriate to topic. Speech was normal in rate, volume and productivity. Thoughts were logical and goal-directed, without (Continued)

Because substantial evidence of record supports the Commissioner's determination that Burgess can perform the physical and mental requirements of medium work as identified by the ALJ (*see* Tr. 26), and plaintiff makes no argument that this residual functional capacity would preclude his performance of his past relevant work as a cleaner/housekeeper (*compare* Doc. 13 *with* Tr. 29-30 & 51-52), the Commissioner's fourth-step determination is due to be affirmed. *Compare Land, supra,*

---

evidence of thought disorder or delusion. No Suicidal/Homicidal ideation. No Auditory/Visual hallucinations. At this time, this veteran is not considered to be a danger to self or a danger to others. Imp.: VET FOCUS TODAY IS FEELING BETTER DURING THE DAY; LESS ANXIOUS AND IRRITABLE[.]"); Tr. 262 ("Fully oriented. Well-groomed and cooperative. Mood was presented as mildly to moderately irritable with generally somewhat restricted affect. Denied suicidal intent or planning, H/I, hallucinations, and delusions. Attention, memory, and judgment appeared to be WNL."); Tr. 263 (specifically noting *no* total occupational and social impairment due to PTSD signs and symptoms but some deficiencies in certain areas due to the claimant's "reported impaired impulse control, difficulty in adapting to stressful circumstances (including work), and an inability to establish and maintain effective relationships."); Tr. 290 ("MSE: Appearance: Neatly dressed and groomed black male looks stated age. Attitude/General Behavior: pleasant and cooperative with examiner[.] Alertness/Orientation: Alert/Oriented to person, time, place, and situation. Speech: normal in rate and volume[.] Psychomotor: calm[.] Affect/Mood: appropriate/'somber[.]' Thought Process: logical and goal directed[.] Thought Content—suicidal or homicidal ideations: none[.] Delusions: none[.] Ideas of reference: none[.] Preoccupations: none[.] Hallucinations/Illusions: none[.] Anxiety: mild[.] Intelligence: average by verbal ability[.] Insight/Judgment: fair/fair[.] Cognitive: grossly intact with interview[.]"); Tr. 372 ("Mood was reported as 'UP AND DOWN' and affect was OVERTLY CALM AND ENGAGING, appropriate to topic. Speech was normal in rate, volume and productivity. Thoughts were logical and goal-directed, without evidence of thought disorder or delusion. No Suicidal/Homicidal ideation. No Auditory/Visual hallucinations. At this time, this veteran is not considered to be a danger to self or a danger to others. Imp.: PARTIAL RESPONSE TO CURRENT REGIMEN."); Tr. 386 ("Mood was reported as 'LESS IRRITABLE' and affect was CALM-MORE ENGAGING, appropriate to topic. Speech was normal in rate, volume and productivity. Thoughts were logical and goal-directed, without evidence of thought disorder or delusion. No Suicidal/Homicidal ideation. No Auditory/Visual hallucinations. At this time, this veteran is not considered to be a danger to self or a danger to others. Imp.: PARTIAL RESPONSE TO CURRENT REGIMEN."); & Tr. 393 ("Mood was reported as 'kinda somber' and affect was subdued, appropriate to topic. Speech was normal in rate, volume and productivity. Thoughts were logical and goal-directed, without evidence of thought disorder or delusion. No Suicidal/Homicidal ideation. No Auditory/Visual hallucinations. At this time, this veteran is not considered to be a danger to self or a danger to others.")) and the group therapy counseling notes (*see* Tr. 244-249, 255-260, 264-265, 317, 347-352, 369, 375-384 & 388-390 (counselor's consistent notation that Burgess attended the group PTSD therapy session on time and fully participated in all activities, with behavior appropriate for the setting and with an affect and demeanor "congruent with behavior and diagnosis[]")).

494 Fed.Appx. at 49 & 50 ("[S]tep four assesses the claimant's RFC to determine whether the claimant is capable of performing 'past relevant work.' . . . A claimant's RFC takes into account both physical and mental limitations. . . . Because more than a scintilla of evidence supported the ALJ's RFC assessment here, we will not second-guess the Commissioner's determination.") *with Phillips v. Barnhart*, 357 F.3d 1232, 1238-1239 (11th Cir. 2004) ("At the fourth step, the ALJ must assess: (1) the claimant's residual functional capacity []; and (2) the claimant's ability to return to [his] past relevant work. As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. Moreover, the ALJ will assess and make a finding about the claimant's residual functional capacity based on all the relevant medical and other evidence in the case. Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to [his] past relevant work under the fourth step; and (2) can adjust to other work under the fifth step . . . . If the claimant  can return to [his] past relevant work, the ALJ will conclude that the claimant is not disabled. If the claimant cannot return to [his] past relevant work, the ALJ moves on to step 5." (internal citations, quotation marks, and brackets omitted; brackets added)).

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 20th day of May, 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**